**Sharon A. PRINCE, Plaintiff–Appellee,**

v.

**Jan HICKS, individually and in her official capacity as Assistant District Attorney General, Defendant–Appellant,**

**James Hazelhurst, individually and in his official capacity, Defendant.**

**No. 98–5782.**

United States Court of Appeals, Sixth Circuit.

Argued June 11, 1999.

Decided Dec. 2, 1999.

---

Peter Alliman (argued and briefed), White, Carson, & Alliman, Madisonville, Tennessee, for Appellee.

Heather C. Ross (argued and briefed), Office of the Attorney General, Nashville, Tennessee, for Appellant.

Before: KEITH, DAUGHTREY, and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

Sharon Prince brought this 42 U.S.C. § 1983 suit against Jan Hicks and others for alleged violations of her rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. Prince was arrested and detained for allegedly kidnaping her infant grandson. Hicks, a state prosecutor, filed a motion to dismiss Prince's § 1983 suit for failure to state a claim, asserting absolute immunity. The district court divided Prince's complaint into eight "functional categories," granted Hicks's motion with respect to six, and denied her motion with respect to two. Hicks appeals the district court's decision on the two "functional categories" for which absolute immunity was denied. For the reasons set forth below, we AFFIRM the district court's denial of absolute immunity for these two categories.

## I. JURISDICTION

■ We generally lack jurisdiction over a district court's decision not to dismiss a suit for failure to state a claim. However, when a motion to dismiss is based on a state official's assertion of absolute immunity, a district court's denial of that motion is an immediately appealable collateral order. *See Nixon v. Fitzgerald*, 457 U.S. 731, 742, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Cullinan v. Abramson*, 128 F.3d 301, 307 (6th Cir.1997), *cert. denied*, 523 U.S. 1094, 118 S.Ct. 1560, 140 L.Ed.2d 792 (1998). Absolute immunity shields specific public officials from the burdens of certain lawsuits, and a denial of immunity is thus effectively unreviewable if review is deferred until final judgment.

## II. BACKGROUND

The issue in this case is whether Hicks can meet her burden under Federal Rule of Civil Procedure 12(b)(6) of showing that absolute immunity is justified for each of Prince's claims. Therefore, we must "make two important assumptions about the case: first, that petitioner's allegations are entirely true; and, second, that they allege constitutional violations for which § 1983 provides a remedy. [The following] statement of facts is therefore derived entirely from [Prince's] complaint and is limited to matters relevant to [Hicks's] claim to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 261, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Plaintiff–Appellee Prince is the wife of Roland Prince, former Chancellor for the Seventh Judicial District in Tennessee. During the relevant period of time, Defen-

dant–Appellant Hicks was the Assistant District Attorney General. Both Sharon Prince and her husband publicly criticized the work of the District Attorney General's office and supported, in both primary and general elections, opposition candidates for the position of District Attorney General. Prince states that as a result of this public criticism Hicks developed animosity towards Prince and her husband.

In early 1996, Prince became concerned with the well being and care of her grandson, Chase Lankford, because of drug use by the child's parents, Sherry and Gerald Lankford. Prince agreed to take physical custody of Chase while Sherry entered into treatment for her drug problems. On or about August 19, 1996, the Lankfords contacted Prince demanding return of the child. Sherry had not entered drug treatment and the couple appeared intoxicated at the time. Fearing that the couple would take the child and leave the state, Prince sought an emergency protective custody order from the Juvenile Court for Knox County, Tennessee.

The Lankfords contacted Hicks about Prince's retention of the child. Hicks and another defendant, Anderson County detective Hazelhurst, pursued the Lankfords' complaint. An affidavit of arrest was eventually prepared by either Hicks or Hazelhurst, which was then presented to Criminal Court Judge Buddy Scott. Based on the facts as they were presented to Judge Scott, he approved the issuance of an arrest warrant. After signing the warrant, Judge Scott apparently came upon other facts that led him to order that Prince be released on her own recognizance as soon as she turned herself in.

Hicks apparently waited for Judge Scott to leave for the day, and then contacted Chancellor William Lantrip and requested an order that Prince be held without bond. Hicks did not tell Chancellor Lantrip of Judge Scott's decision. After Prince turned herself in, she was held pending a bond hearing before Chancellor Lantrip. Prince was then forced to testify before

Chancellor Lantrip in handcuffs and shackles. At the hearing, Chancellor Lantrip ordered that Prince be released. Prince was returned to a cell, however, and was not released until Chancellor Lantrip personally intervened. Hicks and other defendants continued to threaten Prince with prosecution and offered Prince a plea bargain if she would execute a release for any liability related to the arrest and charges brought against her. Hicks and other defendants also threatened to instigate media coverage of the arrest. Prince refused to sign an agreement. The case was finally dismissed, but Hicks warned Prince that the charges could be reinstated.

Prince brought this 42 U.S.C. § 1983 action for damages against Hicks and other defendants alleging violations of her rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. She also sought punitive damages. Hicks moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all of Prince's claims against her for "failure to state a claim upon which relief can be granted." Hicks asserted absolute immunity to all of Prince's claims.

The district court divided Prince's claims against Hicks into eight "functional categories." See Joint Appendix ("J.A.") at 91 (Mem.Op.). The district court granted Hicks's motion with respect to six of Prince's claims, but denied Hicks's motion with respect to two of the claims. Those claims are the "claims for relief . . . against [Hicks] in her individual capacity arising out of [Hicks's] alleged investigation of, or failure to investigate adequately, criminal charges against [Prince], and [Hicks's] alleged advice to law enforcement officers concerning the existence of probable cause to arrest or to charge a criminal offense in the plaintiff's case." J.A. at 111 (Order). Hicks appealed the denial of her motion with respect to these two claims. No other claims are at issue on this appeal.

## III. ANALYSIS

### A. Standard of Review

 We review de novo a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, construing the complaint in the light most favorable to the plaintiff and accepting as true all well-pleaded factual allegations. *Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir.1997). "The claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Joseph v. Patterson*, 795 F.2d 549, 551 (6th Cir.1986), *cert. denied*, 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987).

 The Supreme Court has repeatedly endorsed a "functional approach" to determine whether a prosecutor is entitled to absolute immunity. *Buckley*, 509 U.S. at 269, 113 S.Ct. 2606. This approach looks to "the nature of the function performed, not the identity of the actor who performed it." *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). The Court has also explained that "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).

### B. Investigation

 Hicks argues that the district court erred when it concluded that she was not protected by absolute immunity with respect to claims made by Prince in ¶ 13 of the amended complaint. Paragraph 13 reads, in part:

> After the Lankfords contacted Hicks, she and Defendant Hazelhurst, an Anderson County detective, undertook to perform an investigation of the circumstances surrounding the Lankfords [sic] complaints or, alternatively, performed no investigation or a grossly inadequate investigation. Prior to the establishment of any probable cause whatsoever for the arrest or charging of the Plaintiff with a crime, the Defendants knew or should have known that the Plaintiff had applied for an emergency protective custody order with the Juvenile Court for Knox County, Tennessee, were aware or should have been aware of the circumstances surrounding Plaintiff's taking physical custody of the child and were aware or should have been aware that there was no probable or justifiable cause to believe Plaintiff had committed or was committing a crime.

J.A. at 31–32 (Am. Compl. at ¶ 13).

 A prosecutor is entitled to absolute immunity when that prosecutor acts "as an advocate for the State" and engages in activity that is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *see also Burns v. Reed*, 500 U.S. 478, 491, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (quoting *Imbler*, 424 U.S. at 430–31, 96 S.Ct. 984). The Supreme Court has explained, however, that "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606. For example, a prosecutor who "performs the investigative functions normally performed by a detective or police officer" such as "searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested" is entitled only at most to qualified immunity. *Id.* Therefore, we must determine whether Hicks has allegedly engaged in preliminary conduct that is simply administrative or investigative in nature or whether she has engaged in conduct that is actually part of her function as an advocate for the state.

Hicks argues that she is entitled to absolute immunity based on our decision in *Grant v. Hollenbach,* 870 F.2d 1135 (6th Cir.1989), a case in which we concluded that prosecutors were protected by absolute immunity even though they had failed to investigate adequately the charges that eventually formed the basis of a criminal complaint. The plaintiff in *Grant* had been indicted on sexual abuse charges, but the charges were later dismissed. One of the allegations in the plaintiff's complaint stated that the prosecutors "failed to conduct an objective and impartial investigation as to the charge, and the credibility and competency of the accusers." *Id.* at 1136 (citing the complaint). The court noted that "[t]his is not a case in which the prosecutor allegedly violated plaintiff's or another's constitutional rights through actual investigation" and concluded that the complaint was properly dismissed on absolute immunity grounds because "the *decision* of the prosecutors to investigate a serious criminal charge [as opposed to an actual investigation] is protected by absolute immunity." *Id.* at 1138–39 (emphasis in original).

The allegations in *Grant,* however, are not analogous to the allegations made in the present case because Prince has alleged that Hicks violated her constitutional rights when she "undertook to perform an investigation." J.A. 31 (Am. Compl. at ¶ 13). Furthermore, we do not believe that the court's distinction in *Grant* between a prosecutor who simply decides whether to initiate an investigation and a prosecutor who actually participates in an investigation holds up after the Supreme Court's decisions in *Burns* and *Buckley.* In *Buckley,* the Supreme Court explained that a prosecutor who performs functions typically undertaken by a police officer or detective, e.g., actively gathering evidence or deciding whether to follow up on an investigative lead, is not entitled to absolute immunity if the prosecutor performs these functions outside his actions as an advocate for the state. *Buckley,* 509 U.S. at 273–74, 113 S.Ct. 2606. By contrast, a prosecutor who "evaluat[es] evidence and interview[s] witnesses as he prepares for trial" is protected by absolute immunity. *Id.* at 273, 113 S.Ct. 2606.

The line between conduct that is part of a preliminary investigation and conduct that is intimately associated with the judicial phase of a criminal proceeding is difficult to draw in some cases. *See, e.g., Burns,* 500 U.S. at 495, 111 S.Ct. 1934 ("Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive."). Nevertheless, the approach endorsed by the Supreme Court in *Burns* and *Buckley* requires a court to focus on the specific conduct at issue in a case and determine whether a prosecutor was acting as an advocate for the state or whether she was simply engaging in preparatory conduct and performing administrative or investigative functions. Indeed, although prosecutors generally are not absolutely immune when they engage in administrative or investigative acts, the absolute immunity question nonetheless turns on the specific circumstances of the case. *See Ireland v. Tunis,* 113 F.3d 1435, 1447 (6th Cir.) ("Absolute prosecutorial immunity will likewise attach to administrative or investigative acts necessary for a prosecutor to initiate or maintain the criminal prosecution.") (footnote omitted), *cert. denied,* 522 U.S. 996, 118 S.Ct. 560, 139 L.Ed.2d 401 (1997); *Guzman–Rivera v. Rivera–Cruz,* 55 F.3d 26, 29 (1st Cir.1995) ("[A]bsolute immunity may attach even to ... administrative or investigative activities when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court.") (emphasis in original) (quoting *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1490 (10th Cir.1991)).

Based on this approach, we believe that Hicks is not entitled to absolute immunity with respect to the allegations in ¶ 13 be-

cause these allegations refer to conduct that occurred while Hicks performed administrative and investigative functions that were not intimately associated with the judicial phase of the criminal proceedings. In her amended complaint, Prince claims that Hicks engaged in unconstitutional conduct when she "undertook to perform an investigation of the circumstances surrounding [the daughter and son-in-law's] complaints or, alternatively, performed no investigation or a grossly inadequate investigation." J.A. at 31 (Am. Compl. at ¶ 13). Because Hicks has failed to meet her burden to show that the alleged investigation or failure to investigate was intimately associated with the judicial phase of the criminal process, the district court properly refused to dismiss the allegations contained in ¶ 13 of the amended complaint on absolute immunity grounds. *See, e.g., Buckley,* 509 U.S. at 274, 113 S.Ct. 2606 ("A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."); *Ireland,* 113 F.3d at 1447 n. 7 ("Conducting a preliminary investigation is generally removed from a prosecutor's role in a judicial proceeding; 'such investigations take place outside the adversarial arena with its attendant safeguards that provide real and immediate checks to abusive practices.'") (citation omitted).

### C. Advice to Police Officer

■ Hicks also argues that the district court erred when it determined that she was not protected by absolute immunity with respect to some of the allegations in ¶ 14 of Prince's amended complaint. This paragraph reads:

> Even though whatever investigation, if any was done, revealed no, or would have revealed no, probable cause to issue an arrest warrant, the Defendant Hicks either prepared or caused to be prepared the affidavit of arrest for Plaintiff knowing there was no probable cause for the arrest warrant to issue or recklessly determining there was proba-

ble cause. Alternatively, Defendant Hicks gave legal advice to Defendant Hazelhurst that there was probable cause for the warrant to issue and he, in turn, executed the warrant in reliance, in whole or in part, on that advice.

J.A. at 32 (Am. Compl. at ¶ 14). The district court granted Hicks absolute immunity for the conduct complained of in the first sentence of the paragraph—Hicks personally preparing or causing to be prepared the affidavit of arrest. *See* J.A. at 98 (Mem. Op.) (citing *Kalina v. Fletcher,* 522 U.S. 118, ——, 118 S.Ct. 502, 509, 139 L.Ed.2d 471 (1997)). *See also Ireland,* 113 F.3d at 1446–47; *Joseph,* 795 F.2d at 555. Relying on *Burns v. Reed,* 500 U.S. at 478, 111 S.Ct. 1934, however, the district court denied Hicks absolute immunity for the alleged conduct of advising Hazelhurst that there was probable cause to arrest.

In *Burns,* two police officers investigating a shooting of two boys suspected that the mother had multiple personalities and may have been responsible for the crime. The two officers contacted the chief deputy prosecutor to inquire as to the legality of subjecting the mother to hypnosis. The prosecutor advised the police officers that they could proceed. After the hypnosis session, upon hearing the statements the mother had made, the prosecutor advised the officers that they "probably had probable cause" to arrest the mother. *See id.* at 482, 111 S.Ct. 1934. The Supreme Court held that "advising the police in the investigative phase of a criminal case is [not] so 'intimately associated with the judicial phase of the criminal process' that it qualifies for absolute immunity." *Id.* at 493, 111 S.Ct. 1934 (citation omitted). The Court added, "it is incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice." *Id.* at 495, 111 S.Ct. 1934.

■ We conclude that Prince's crafting of the second sentence of ¶ 14, alleging facts in the alternative, fits her claim with-

in the holding of *Burns*. Prince argues that Hicks "gave legal advice" to Hazelhurst. It is important to note that simply alleging that a prosecutor gave legal advice is not necessarily sufficient to survive an assertion of absolute immunity. To fall outside the prosecutor's function as an advocate for the state, the legal advice must have been given as part of the investigative or administrative phase of the criminal case. It is not enough for Prince to argue that Hicks "gave legal advice" to Hazelhurst, if Hicks can still show that her "advice" was simply part of her preparation for initiation of prosecution against Prince. "Absolute prosecutorial immunity [attaches] to administrative or investigative acts necessary for a prosecutor to initiate or maintain the criminal prosecution." *Ireland*, 113 F.3d at 1447 (footnote omitted).[1] Thus, "[a] prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer fall squarely within the aegis of absolute prosecutorial immunity." *Id.* at 1446.

■ Prince alleges here, however, that "Defendant Hicks gave legal advice to Defendant Hazelhurst that there was probable cause for the warrant to issue." J.A. at 32 (Am. Compl. at ¶ 14). Further reading this claim as part of ¶ 14 in its entirety, we think it is clear that Prince is also claiming that Hicks gave this legal advice before probable cause to arrest Prince existed. Indeed, Prince alleges in ¶ 14 that probable cause to arrest her never existed. As we noted above, the Supreme Court wrote in *Buckley* that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley*, 509 U.S. at 274, 113 S.Ct. 2606. It is impor-

tant to read this sentence in the context of the *Buckley* decision in its entirety. A footnote in *Buckley* following the above-quoted sentence clarifies a point that Prince fails to recognize. A prosecutor performing an investigative function before she has probable cause to arrest a suspect cannot expect to receive the protection of absolute immunity, but a prosecutor who initiates criminal proceedings against a suspect whom she had no probable cause to prosecute is protected by absolute immunity. *See Buckley*, 509 U.S. at 274 n. 5, 113 S.Ct. 2606 (explaining that "there is no [anomaly] in denying absolute immunity for a state actor's investigative acts made before there is probable cause to have a suspect arrested just because a prosecutor would be entitled to absolute immunity for the malicious prosecution of someone whom he lacked probable cause to indict") (citation omitted). The dividing line is not, as Prince argues, the point of determination of probable cause. Instead, the dividing line is the point at which the prosecutor performs functions that are intimately associated with the judicial phase of the criminal process. Nevertheless, Prince's complaint suffices to avoid a Rule 12(b)(6) dismissal on absolute immunity grounds at this stage. The complaint, read in the light most favorable to Prince, alleges that Hicks gave Hazelhurst advice as to probable cause and Hazelhurst acted on it. Although the next few paragraphs of the complaint characterize Hicks and Hazelhurst as together initiating criminal proceedings against Prince, the complaint can be read to allege that Hicks gave Hazelhurst legal advice prior to the existence of probable cause and prior to Hicks's determination that she would initi-

---

1. The district court read this quote from *Ireland* broadly and declared that it was inconsistent with the Supreme Court's holding in *Buckley*. We noted in *Ireland*, however, the limited reach of our statement. *See Ireland*, 113 F.3d at 1447 n. 7. Moreover, our point was derived directly from the Supreme Court's holding in *Imbler*, as later clarified in *Burns* and *Buckley*. Supreme Court prece-

dent makes clear that not all investigatory functions performed by a prosecutor are outside the umbrella of absolute immunity, but only "those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606.

ate criminal proceedings against Prince. Hazelhurst then "executed the warrant in reliance, in whole or in part, on that advice." J.A. at 32 (Am. Compl. at ¶ 14). At the time this advice was given, Hicks would not have been acting as an advocate for the state.

Hicks argues that *Burns* does not apply to this case because the advice given in *Burns* was with respect to a warrantless arrest, whereas here the alleged advice was with respect to the drafting of a warrant that was then brought before, and authorized by, a qualified judicial officer. The determinative question, however, is whether the advice was given as part of the investigative function in the criminal inquiry. We find no support in *Burns* for a bright-line rule that advice leading to a warrantless arrest is always in the performance of an investigative function, while advice leading to the drafting of an arrest warrant that is then brought before a judicial officer is always in the performance of an advocacy function. While these facts, when further developed, could support an argument that Hicks was simply taking a necessary step in the initiation of criminal proceedings when she allegedly gave advice to Hazelhurst, *see Ireland*, 113 F.3d at 1447, this is not the factfinding stage.

Considering Prince's complaint in the light most favorable to her, we believe the complaint could properly be read to allege that Hicks gave legal advice to Hazelhurst in the performance of an investigative function that had only an attenuated connection to the judicial phase of the criminal process, and we therefore affirm the district court in denying Hicks absolute immunity under the alternative claim in ¶ 14 of Prince's complaint.

### IV. CONCLUSION

Because Prince has alleged that Hicks violated her constitutional rights while engaging in conduct that is not intimately associated with the judicial phase of a criminal proceeding, Hicks is not entitled to absolute immunity with respect to the claims in ¶ 13 as well as the claims in ¶ 14 relating to the legal advice Hicks allegedly gave defendant Hazelhurst. Thus, we AFFIRM the district court's denial of absolute immunity with respect to these claims in this case.